UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION – DETROIT

In re:

    Alan J. Stalter,

        Debtor.

Case No. 11-49584
Chapter 7
Hon. Walter Shapero

_____/

Cynthia Barton, Cynthia Barton Living Trust,
and Dr. Edward Barton,

    Plaintiffs,

v.

Adv. Pro. No. 11-06058

Alan J. Stalter,

    Defendant.

_____/

## OPINION REGARDING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

### I. BACKGROUND AND FACTS

#### A. Summary of Proceedings in this Court

On April 4, 2011, Alan Stalter ("Defendant") filed his chapter 7 bankruptcy petition. On July 18, 2011, Dr. Edward Barton, Cynthia Barton, and the Cynthia Barton Living Trust ("Plaintiffs") filed an adversary complaint against Defendant to determine that an Oakland County Circuit Court Consent Judgment and Settlement Agreement are not dischargeable under 11 U.S.C. § 523(a)(2), (4), (6), and (19). Plaintiffs moved for summary judgment and that is what is before the Court.

#### B. Facts Preceding the Oakland County Circuit Court Proceeding

Defendant and Thomas Beer ("Beer") owned a company named the Laker Group, LLC ("Laker"), which was in the business of buying, rehabilitating, and "flipping" real properties.

1

Defendant and Beer had done business together for approximately a decade prior to the petition date. Defendant, Thomas Beer, and Laker also owned an entity named Griffin Equity Holdings, LLC ("Griffin"), which was formed in February 2008, following which it sought out potential investors.

In April 2008, Defendant met Dr. Barton, a medical doctor from whom Defendant sought medical treatment. Defendant invited Dr. Barton to invest in Griffin by way of purchasing a membership interest. Over the course of several months, Defendant solicited Dr. Barton to invest in Griffin, and, in June 2008, Defendant provided Dr. Barton with a Subscription Agreement, Offering Memorandum, and a cover letter signed by Beer. Dr. Barton signed and returned the Subscription Agreement and delivered a $200,000 check, apparently on behalf of himself and his wife, Cynthia Barton, to purchase the membership interest. Defendant countersigned the Subscription Agreement and returned a copy to Dr. Barton. Plaintiffs allege that (a) their investment money was transferred from Griffin's bank account to the Laker bank account and Griffin ceased doing business; and (2) Defendant made a direct admission in the Circuit Court case that only $5,000 out of the Bartons' $200,000 was used for properties which were owned and titled in Griffin's name.

Plaintiffs were apparently aware when their investment was made that the Griffin Operating Agreement had not yet been completed, but notwithstanding that, they chose to invest. Plaintiffs allege that Defendant represented that the Bartons would have an opportunity to review Griffin's Operating Agreement and could have their investment refunded if they were not comfortable after reviewing it. In that regard, the Subscription Agreement provided:

> [A]n Operating Agreement will be delivered to the subscriber for execution, and, in the event the subscriber fails to execute and deliver the operating agreement to the company, this Agreement shall be deemed null and void, and any monies contributed to the company by the subscriber will be promptly refunded.

Plaintiffs allege that they were never provided a copy of the Operating Agreement, although they requested it, and they never executed one.

Defendant alleges that Plaintiffs' investment, along with other monies raised by Griffin, was used to purchase and rehabilitate real estate. Defendant also alleges that (a) by October 2008, the credit market had collapsed and Griffin could not sell any of its real estate inventory because purchasers could not access credit to purchase the properties, and (b) Griffin was unable

2

to buy additional real estate because cash flow from the sales of existing homes was necessary to fund new purchases.

On or about November 30, 2008, Plaintiffs made a written request to Griffin for a refund of their $200,000 investment. Plaintiffs claim that previous to that they did not receive the 15% agreed upon return on their investment and they only received a single distribution of $1,583.33 on July 13, 2008. Griffin notified Plaintiffs that their money had been fully invested in real estate, that the credit market was frozen, and that Griffin was doing everything it could to sell properties in order to refund Plaintiffs' investment. In October 2008, Defendant provided the Bartons with various, mostly junior, security interests in various properties owned by Laker.

### C. Proceedings in Oakland County Circuit Court Case

On June 16, 2009, Plaintiffs filed a complaint in the Oakland County Circuit Court against Stalter, his affiliated business entities, and his business partners (Case No. 09-100453-CZ) alleging the following counts: Civil Conspiracy, Concert of Actions, Breach of the Subscription Agreement and Specific Performance, Violation of the Michigan Uniform Securities Act, Fraud, Misrepresentation, Silent Fraud, Breach of Fiduciary Duty, Conversion, Unjust Enrichment, and Foreclosure. The gravamen of the Complaint was that the defendants, under the pretense of using the capital for Griffin, actually used the capital for Laker ventures.

All of the parties, including Stalter, were represented by counsel in that case. The case had proceeded through discovery, pre-trial proceeding, and Plaintiffs had brought a Motion for Summary Disposition. That motion was pending at the time the parties agreed to settle the case.

In July 2010, Stalter and Beer negotiated a Settlement Agreement dated August 2010[1] with the Plaintiffs to resolve the Circuit Court case. The Settlement Agreement provided that Stalter and Beer agreed to entry of a judgment against them in the amount of $165,000 plus statutory judgment interest, and also provided that Stalter and Beer were each required to make $10,000 annual payments to the Plaintiffs over the time to apply therein. It further provided that if Stalter or Beer missed a single payment and the Bartons were required to pursue collection

---

[1] It is unclear what date the Settlement Agreement was actually executed. The Settlement Agreement attached as an exhibit to Defendant's Response to Plaintiffs' Motion for Summary Judgment states: "This Settlement Agreement is entered into on July ____, 2010 . . . ." It has at all times, including in the state court Stipulated Judgment and in the pleadings filed in this case, been referred to as the Settlement Agreement dated August 2010. It appears that there was only one Settlement Agreement in the state court case. The Court will continue to refer to the Settlement Agreement as being dated August 2010.

efforts as a result of a default, the Bartons would be entitled to attorneys' fees. The Settlement Agreement reserved any admission of liability, providing: "This Settlement Agreement is not to be construed as an admission of liability on the part of Stalter and Beer, who continue to deny any and all liability." The Stipulated Judgment entered in that case provided that the judgment was subject to the terms of the Settlement Agreement entered into by the parties.

Beer failed to make a single payment under the Settlement Agreement and Stalter only made one payment of $6,000. The Bartons initiated collection efforts, which led to Stalter filing his chapter 7 bankruptcy petition.

## II. DISCUSSION

Plaintiffs' Motion for Summary Judgment seeks partial summary judgment with respect to the 11 U.S.C. § 523(a)(19) claim, arguing that the doctrine of collateral estoppel and the plain language of the Code bar Defendant from here re-litigating the issues of Defendant's violations of the Michigan Securities Laws, which they claim had been decided in the Oakland County Circuit Court, and thus the debt stemming from the Consent Judgment and Settlement Agreement between the parties is non-dischargeable under § 523(a)(19) as a matter of law. Defendant argues that, because there was no determination in the state court case that a violation of the Michigan Securities Laws had occurred, there are remaining questions of fact and summary judgment is thus inappropriate. At a preliminary hearing, the Court ruled that collateral estoppel does not apply, but took under advisement Plaintiffs' alternative argument that the consent judgment premised upon a violation of federal or state securities laws is not dischargeable under § 523(a)(19) as a matter of law, irrespective of the application of the doctrine of collateral estoppel.

### A. Summary Judgment Standard

Federal Rule of Civil Procedure 56 is made applicable in its entirety to bankruptcy adversary proceedings by Fed. R. Bankr. P. 7056. Federal Rule of Bankruptcy Procedure 7056(c) provides that summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *See Choate v. Landis Tool Co.*, 46 F. Supp. 774 (E.D. Mich. 1980). The moving party

4

11-06058-wsd    Doc 41    Filed 09/25/12    Entered 09/25/12 14:04:45    Page 4 of 7

bears the burden of showing the absence of a genuine issue of material fact as to an essential element of the non-moving party's case. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472 (6th Cir. 1989) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). The burden then shifts to the nonmoving party once the moving party has met its burden, and the nonmoving party must then establish that a genuine issue of material fact does indeed exist. *Janda v. Riley-Meggs Industries, Inc.*, 764 F. Supp 1223, 1227 (E.D. Mich. 1991).

### B. <u>11 U.S.C. § 523(a)(19)</u>

11 U.S.C. § 523(a)(19) excepts from discharge any debt that—

(A) is for—

(i) the violation of any of the Federal securities laws (as that term is defined in section 3(a)(47) of the Securities Exchange Act of 1934, any of the State securities laws, or any regulation or order issued under such Federal or State securities laws; or

(ii) common law fraud, deceit, or manipulation in connection with the purchase or sale of any security; and

(B) results from—

(i) any judgment, order, consent order, or decree entered in any Federal or State judicial or administrative proceeding;

(ii) any settlement agreement entered into by the debtor; or

(iii) any court or administrative order for any damages, fine, penalty, citation, restitutionary payment, disgorgement payment, attorney fee, cost, or other payment owed by the debtor.

"Section 523(a)(19) has two separate conditions for non-dischargeability separated by a semicolon and the word 'and.'" *Mollasgo v. Tills (In re Tills)*, 419 B.R. 444, 451 (Bankr. S.D. Cal. 2009). "The statute, thus, plainly indicates that the conditions must be independently satisfied-securities violations must have occurred **and** a settlement (or other final resolution of the claim) must be completed." *Id.* (citing *Peterman v. Whitcomb (In re Whitcomb)*, 303 B.R. 806, 810 (Bankr.N.D.Ill.2004) (debt dischargeable under section 523(a)(19) if two conditions met)).

5

Plaintiffs claim that because the Circuit Court complaint included a count for Violation of the Michigan Securities Laws and there was a consent judgment in that case, the debt is per se non-dischargeable in this bankruptcy case.

Plaintiffs rely on the case of *In re Whitcomb*, 303 B.R. 806 (Bankr. N.D. Ill. 2004), in which the court concluded, on a plaintiff creditor's motion for judgment on the pleadings, that the debt arising from a settlement agreement entered into by the debtor for payment of damages in litigation to recover for alleged fraud was excepted from discharged pursuant to § 523(a)(19).

Defendant cites *In re Tills*, 419 B.R 444 (Bankr. S.D. Ca. 2009), which involved similar facts to those in this case. There, upon a creditor's motion for summary judgment, the court considered whether a settlement agreement that expressly stated that the debtor settled without acknowledging any fault or liability was sufficient to meet the requirements of § 523(a)(19) as a matter of law. That court thoroughly discussed § 523(a)(19) and held that nondischargeability under that section is limited for those who, in fact, have violated securities laws. That court denied the plaintiff's motion for summary judgment, holding that there were "triable issue[s] of material fact as to whether securities violations exist in this case" because the debtor has settled without acknowledging fault or liability and the settlement agreement did not contain "a single concession or factual recitation whereby the [d]ebtor concedes any fault or damages." *Id*. at 457.

The creditor in *In re Tills*, like the Plaintiffs here, relied on *In re Whitcomb* to support his argument. In *In re Tills*, the court discussed the decision in *In re Whitcomb*, stating:

> The case on which Creditor relies most strongly is the *Whitcomb* case. *Whitcomb*, however, is clearly distinguishable from the case at hand. First, *Whitcomb* involves a plaintiff's unopposed motion for judgment on the pleadings in a section 523(a)(19) action. *Whitcomb,* 303 B.R. at 809–10. The lack of opposition allowed the Court considerable latitude in regards to the plaintiff's liability allegations. Having said this, however, the *Whitcomb* court carefully discussed the **two** requirements of section 523(a)(19) liability in reaching its determination. *Id.* at 810. While the record is not detailed and it does not appear that the *Whitcomb* settlement agreement contained detailed admissions, the *Whitcomb* court found that: "the agreed judgment order provided that the Debtor agreed that he damaged the Petermans." *Id.* at 808. In this case the Debtor has admitted neither fault nor liability. And unlike the *Whitcomb* defendant, the Debtor expressly reserved his right to assert innocence through Settlement Agreement language providing that entry into the settlement was **not** to be read as conceding fault or liability.
>
> Similarly, in *Hodges v. Buzzeo (In re Buzzeo),* 365 B.R. 578 (Bankr.W.D.Pa.2007), the court found a claim non-dischargeable under section 523(a)(19) where it was based on a settlement agreement arising from allegations

6

of securities violations and where the plaintiff did not admit the allegations of Count I (fraud in connection with the sale of securities) but did agree that the debt would be non-dischargeable under section 523(a)(2) and that: "... in any subsequent proceeding to which the [plaintiffs] and Buzzeo are parties, all of their allegations set forth in Count I may be taken as true and correct ... [and that] the stipulated judgment will collaterally estop [*Buzzeo* ] ..." 365 B.R. at 580–581. Here, Debtor has not agreed to non-dischargeability.

*In re Tills*, 419 B.R. at 456-57.

This Court agrees with *In re Tills* decision, and its applicability to this case, at least at this stage. In this case, like in *In re Tills*, there was no determination of culpability by the state court and there was no admission of culpability by the Defendant in the Settlement Agreement or Consent Judgment. *See also In re Allison*, 11-04728-8-SWH, 2012 WL 3775982 (Bankr. E.D. N.C. Aug. 29, 2012). Moreover, as noted, Plaintiffs' complaint in the state court alleged numerous counts, including Civil Conspiracy, Concert of Actions, Breach of the Subscription Agreement and Specific Performance, Violation of the Michigan Uniform Securities Act, Fraud, Misrepresentation, Silent Fraud, Breach of Fiduciary Duty, Conversion, Unjust Enrichment, and Foreclosure. The Settlement Agreement does not mention any one of those counts. The existence of so many alternate theories of liability in the state court complaint militates against a conclusion that the Settlement Agreement can be said to be based on any one of them. There are thus triable issues of material fact as to whether there were securities violations in this case. Therefore, Plaintiffs' Motion for Summary Judgment is denied.

### III. CONCLUSION

Plaintiffs' Motion for Summary Judgment is denied. The Court will enter an Order concurrently herewith.

.

**Signed on September 25, 2012**

        **/s/ Walter Shapero**
        **Walter Shapero**
        **United States Bankruptcy Judge**